PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Raushanah Shakia Hunter, an attorney licensed to practice law in Louisiana.
FORMAL CHARGES
Count I-The Bell Matter
By way of background, Haneefah Solomon Bell and her minor daughter allegedly developed significant health problems because their apartment complex failed to properly maintain, clean, and remediate a mold infestation. Ms. Bell secured the services of an environmental consulting firm who tested the apartment complex for toxic *1211 material and mold and provided Ms. Bell with a report dated November 9, 2012.
In November 2013, Ms. Bell hired respondent to handle the personal injury claim arising out of the mold contamination of the apartment complex, at which time she provided respondent with a copy of the November 9, 2012 mold report. Ms. Bell also indicated that respondent agreed to represent her and her daughter and file a lawsuit on their behalf. Ms. Bell further indicated that respondent advised her the fee arrangement was "no fee until case was settled." According to Ms. Bell, she did not sign a written contingency fee agreement, and respondent did not provide her with a copy of any such agreement.
On November 12, 2013, respondent filed a petition for damages on behalf of Ms. Bell and her daughter. On October 10, 2014, the defendant filed a motion for summary judgment. The motion was set for hearing on February 23, 2015. Respondent did not appear for the hearing and did not file any pleadings in opposition to the motion. Accordingly, the judge granted the defendant's motion, and the case was dismissed. Respondent failed to inform Ms. Bell of the dismissal.
In September 2015, following respondent's repeated failures to provide Ms. Bell with requested status updates, Ms. Bell sought the advice of another attorney, who advised Ms. Bell that her case had been dismissed due to respondent's failure to file an opposition to the motion for summary judgment or appear at the related hearing. Thereafter, Ms. Bell attempted to contact respondent via telephone, via text messages, and by stopping by respondent's office and home. None of these efforts were successful. In one instance, respondent answered Ms. Bell's telephone call but pretended Ms. Bell had the wrong number.
In October 2015, Ms. Bell filed a disciplinary complaint against respondent, indicating that her numerous attempts to obtain her file materials, including the November 9, 2012 mold report, from respondent had been unsuccessful. Respondent failed to claim the notice of the complaint sent via certified mail, necessitating the issuance of a subpoena to obtain her sworn statement. On December 1, 2015, respondent appeared for her sworn statement with a written response to the complaint. However, she failed to provide the ODC with Ms. Bell's file, despite being instructed to do so on the subpoena.
During the sworn statement, the ODC instructed respondent to immediately return to Ms. Bell all file materials Ms. Bell had provided to her. The ODC also instructed respondent to advise Ms. Bell in writing that she had committed malpractice, that she now had a conflict of interest because of the potential malpractice claim, and that Ms. Bell should consult with independent counsel of her own choosing. Respondent failed to follow any of these instructions.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7 (conflict of interest), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II-The Jones Matter
In June 2013, Ernest Jones hired respondent to represent him in a work place discrimination and harassment lawsuit against his former employer, the Louisiana Department of Revenue ("LDR"). Mr. Jones paid respondent an advanced attorney fee of $600 and an additional $520 for filing fees.
*1212 On August 1, 2013, respondent filed the lawsuit against the LDR on Mr. Jones' behalf. After Mr. Jones provided his deposition, the LDR filed a motion for summary judgment. Respondent failed to respond to the motion or attend the related hearing on June 16, 2014. Accordingly, the judge granted the motion, and Mr. Jones' lawsuit was dismissed.
In January 2016, Mr. Jones filed a disciplinary complaint against respondent, indicating that he had been unable to contact or meet with respondent since May 2014, despite his numerous attempts. Respondent received notice of the complaint via certified mail but failed to respond, necessitating the issuance of a subpoena to obtain her sworn statement.
Respondent appeared for the sworn statement on March 22, 2016 but failed to bring a copy of Mr. Jones' file as requested on the subpoena. During the sworn statement, respondent acknowledged receiving the complaint but provided no explanation for her failure to respond to the complaint in writing. She also acknowledged that she failed to appear at the hearing on the motion for summary judgment. When asked if she had returned all of Mr. Jones' file materials to him with instructions to secure independent counsel as a result of her malpractice, respondent indicated that she had failed to do so.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.7, 8.1(c), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c).
DISCIPLINARY PROCEEDINGS
In November 2016, the ODC filed formal charges, as set forth above, against respondent. Respondent answered the formal charges, and the matter was set for a formal hearing before the hearing committee. Prior to the hearing, respondent and the ODC submitted a document styled "Stipulations by Respondent," wherein she stipulated as follows: "The Respondent has reviewed and hereby stipulates to all of the factual allegations set forth within the Formal Charges as well as the Rules of Professional Conduct violations set forth therein." The document also stated that the formal hearing on the merits would be converted to a hearing on mitigation only.
Mitigation Hearing
The hearing committee conducted the mitigation hearing on April 25, 2017. The ODC introduced documentary evidence and called Ms. Bell and Mr. Jones to testify before the committee. Respondent did not introduce any documentary evidence but did call five character witnesses to testify before the committee. She also testified on her own behalf and on cross-examination by the ODC.
During her testimony, respondent indicated that she began working as a law clerk/research assistant for another attorney in August 2010. She did not file any pleadings while working in this position and continued in this position until December 2012. She also worked for the B.P. Claims Administrator, researching and reviewing B.P. oil spill claims. She worked under supervision in this position and did not draft or file pleadings or make court appearances.
Respondent further testified that she started her own law office in January 2013, practicing primarily criminal and family law. She indicated that the Bell and Jones cases were the first two civil cases she accepted. She also indicated that, since January 2017, she has worked at Southeast Louisiana Legal Services and that her supervising attorney there is willing to mentor her. Respondent is also closing out the last fifteen to twenty cases left from her private practice.
She expressed remorse and took full responsibility for her failure to properly *1213 calendar the hearing dates for the motions for summary judgment and for her failure to properly communicate with her clients. Regarding her failure to follow the ODC's instructions to contact both Ms. Bell and Mr. Jones to inform them of their possible malpractice claim against her, she indicated that she was afraid her contact would be construed by them as an attempt to coerce them to withdraw their disciplinary complaints against her. Respondent further testified that she still has not returned her clients' files to them.
Respondent also genuinely expressed hope that she could receive professional assistance from the Louisiana State Bar Association ("LSBA") and from other attorneys. She described the disciplinary process as a wake-up call and sees monitoring and supervision by a mentoring attorney as mandatory. She further testified that she is willing to pay restitution to her clients.
Finally, respondent described changes she has made in her office procedures. These changes include keeping digital and hard copy calendars, sending copies of pleadings to clients, providing a place for clients to sign signifying they have received copies of documents, writing notes while the information is fresh in her memory after each telephone call, and sending follow-up emails following telephone calls with clients.
Hearing Committee Report
After considering the evidence and testimony presented at the hearing, the hearing committee found that respondent stipulated to all of the factual allegations and rule violations as set forth in the formal charges. Based on respondent's stipulation and other evidence in the record, the committee made the following determinations:
The evidence that was presented to the Hearing Committee demonstrated in a clear and convincing fashion that the Respondent has clearly violated Rule 1.3 by neglecting in each instance the matters entrusted to her and allowing motion for summary judgments to go unchallenged without even an appearance on behalf of her clients in each instance. She failed in her duty to communicate with her clients in a reasonable fashion in violation of Rule 1.4. Recognizing that her lack of diligence on behalf of her clients had allowed (in each instance) for their cases to be harmed, the Respondent had an affirmative duty to communicate that information to each client along with an explanation that her lack of care may well give rise to a cause of action against her for legal malpractice. Obviously at this juncture she had a conflict of interest with her client which she was duty bound to disclose but which she failed to do in each instance. The Respondent's failures in this regard shift this matter from a "mere malpractice" set of instances to ones warranting the imposition of discipline.
The Respondent also failed on multiple occasions to comply with her ethical obligations of cooperating with the Office of Disciplinary Counsel. She failed consistently to respond to complaints when filed against her; failed to bring with her subpoenaed materials including client files in each instance; and then when instructed by the Office of Disciplinary Counsel to take appropriate remedial efforts to notify the clients of the developments, return files, and to direct them to secure independent counsel, she once again failed to do so.
The committee then determined that respondent knowingly violated duties owed to her clients, which caused actual harm to her clients' causes of action and may have damaged their opportunity to seek appropriate redress through appellate relief or through the pursuit of a legal malpractice claim. The committee also determined that the baseline sanction is suspension based *1214 on the case of In re: Bullock , 16-0075 (La. 3/24/16), 187 So.3d 986, wherein an attorney was suspended from the practice of law for one year and one day, with all but six months deferred, for neglecting her client's legal matter to the point that the claim prescribed, failing to communicate with her client and timely disclose her malpractice, and misleading her client regarding the status of the case.
Regarding aggravating and mitigating factors, the committee noted the ODC stipulated that respondent has a reputation for good character and that she is inexperienced in the practice of law (admitted 2011). Additionally, the committee stated:
Further, as of the hearing, Respondent had not contacted complainants, returned their files, or attempted restitution. All of those unacceptable, unprofessional, harmful and damaging behaviors fly in the face of Respondent's reputation for good character and the first-hand observations of Respondent's character witnesses who presented as credible... Further, the Hearing Committee observed Respondent to be a very sympathetic Respondent with few resources. She presented as truly remorseful, taking full responsibility for her actions, and seeking help she knows she needs to practice in a professional manner. This Respondent does not present as someone who is manipulative; rather, this Respondent presents as a person who is devastated over the harm she has caused. This Respondent also presents as someone who wants to fix the problem now, but she knows realistically that she had no malpractice insurance and no significant income, relying only on the job she has now with Southeast [Louisiana Legal Services] and possibly fees from closing out a handful of cases. This Respondent expects to be disciplined... and is hopeful that she will be able to receive assistance from the LSBA. This Respondent did not present as a belligerent Respondent. Respondent's inexperience at the time may be the root of some of the mistakes that were made. While Respondent has no prior disciplinary record, Respondent had not been an attorney long for the opportunity to develop a disciplinary record.
In light of the above findings, the committee recommended respondent be suspended from the practice of law for one year and one day, with all but four months deferred, followed by two years of supervised probation with the following conditions:
1. Respondent shall attend the LSBA's Ethics School;
2. Respondent shall register for and provide certification of completion of the LSBA's Client Assistance Foundation or The Practice Assistance Foundation for a law office practice management tutorial geared to her practice and needs and to design a practice system to ensure she has the basic structures that she needs;
3. Respondent shall make restitution to Mr. Jones of the $600 he paid in attorney fees and $520 he paid for court costs;
4. Respondent shall make restitution to Ms. Bell for the cost of the mold report and any reasonable expenses Ms. Bell incurred from hiring another attorney to investigate the status of her case; and
5. If respondent returns to the private practice of law in a solo setting during the probationary period, then Respondent shall work under the supervision of another attorney.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
*1215 Disciplinary Board Recommendation
After review, the disciplinary board accepted respondent's stipulations to the factual allegations and the violations of the Rules of Professional Conduct set forth in the formal charges. The board also determined that the hearing committee's additional factual findings are supported by the record and do not appear to be manifestly erroneous.
The board then determined respondent violated duties owed to her clients. Initially, respondent's conduct was negligent, but her subsequent failure to communicate with her clients was knowing and intentional. Her conduct caused actual harm to her clients' causes of action. Additionally, the board determined respondent violated a duty owed to the legal profession by failing to cooperate with the ODC in its investigations. After considering the ABA's Standards for Imposing Lawyer Sanctions , the board determined the baseline sanction is suspension.
In aggravation, the board found multiple offenses and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency. In mitigation, the board found the absence of a prior disciplinary record, inexperience in the practice of law (admitted 2011), and remorse. Additionally in mitigation, the board agreed with the committee that respondent genuinely desires assistance with her law practice and has already made positive practice changes.
After also considering this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for one year and one day, with all but four months deferred, followed by two years of supervised probation with the following conditions:
1. Respondent shall attend the LSBA's Ethics School;
2. Respondent shall accept the appointment of a mentor or practice monitor;
3. Respondent shall seek the help of the LSBA's Practice Assistance programs with regard to calendaring and client communication;
4. Respondent shall provide restitution to Mr. Jones by reimbursing the $600 in attorney's fees and $520 in court costs;
5. Respondent shall provide restitution to Ms. Bell for the cost of the mold report and any reasonable expenses Ms. Bell incurred from hiring another attorney to investigate the status of her case; and
6. Respondent shall practice under the supervision of another attorney during the probationary period.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
In this matter, the formal charges essentially allege that respondent neglected two legal matters, failed to communicate with two clients, and failed to cooperate *1216 with the ODC in two investigations. Respondent subsequently stipulated to the truthfulness of these facts. She also stipulated to the alleged violations of the Rules of Professional Conduct as set forth in the formal charges. Therefore, the only issue remaining for our consideration is the appropriate sanction for respondent's admitted misconduct.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
The record supports a finding that respondent negligently and knowingly violated duties owed to her clients and the legal profession, causing actual harm. The baseline sanction for this type of misconduct is suspension. Aggravating factors include a pattern of misconduct and multiple offenses. Mitigating factors include the absence of a prior disciplinary record, inexperience in the practice of law, character or reputation, and remorse. We also note that respondent has expressed a genuine desire for assistance from the LSBA and other attorneys to learn how to properly manage her practice of law and has already made positive changes to her office procedures.
In light of the above, we find the disciplinary board's recommended sanction will protect the public yet will not be overly punitive for this inexperienced and remorseful respondent. Accordingly, we will adopt the board's recommendation and suspend respondent from the practice of law for one year and one day, with all but four months deferred, followed by two years of supervised probation with the conditions set forth in the board's report.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Raushanah Shakia Hunter, Louisiana Bar Roll number 34227, be and she hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but four months of this suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on supervised probation for a period of two years, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
CRICHTON, J., dissents in part and assigns reasons.
GENOVESE, J., dissents in part for the reasons assigned by Justice Crichton.
CRICHTON, J., dissents in part and assigns reasons:
Although I agree with the per curiam's finding that respondent has violated the Rules of Professional Conduct as charged, I disagree with the sanction imposed as I find it unduly lenient. In my view, respondent's behavior towards clients and her *1217 willful disregard for the disciplinary process is troublesome at best. While I commend her statements of remorse, they belie her reluctance to make any restitution in the modest amount of $1,100 during a three-year period. Respondent has also yet to return any of the files requested by her clients, despite a subpoena and repeated requests by ODC. Furthermore, the incident in which respondent told a client who telephoned her that she had the "wrong number" is revealing of the extent taken to evade her responsibility to stand accountable to her clients. As a result, I find a full one year and one day suspension, with no time deferred, is warranted in this matter. See In re Jalila Bullock , 16-B-0075, p. 2 (La. 3/24/16), 187 So.3d 986, 993-4 (Crichton, J., dissenting, finding imposition of one year and one day (with all but six months deferred) too lenient, where respondent neglected client's legal matter involving claim for wrongful death of a child, allowed it to prescribe, and engaged in a cover-up).
GENOVESE, J., dissents in part for the reasons assigned by Justice Crichton.